1  TERRY COLLINGSWORTH
   JEFFREY VOGT
2  International Labor Rights Fund
   733 15th Street, N.W., Suite 920
3  Washington, D.C. 20005
   Tel: (202) 347-4100
4  Fax: (202) 347-4885

5  DANIEL M. KOVALIK
   Attorney at Law
6  Five Gateway Center, Rm. 807
   Pittsburgh, Pennsylvania 15222
7  Tel: (412) 562-2518
   Fax: (412) 562-2574
8

   PAUL HOFFMAN (SBN# 07244),
   Schonbrun DeSimone Selplow
   Harris & Hoffman LLP
   723 Ocean Front Walk
   Venice, CA 90291
   Tel: 310 396-0731
   Fax: 310 399-7040

   DOUGLASS W. CASSEL
   BRIDGET ARIMOND
   Center for Int. Human Rights
   Northwestern Univ. Law School
   357 East Chicago Ave.
   Chicago, IL 60611
   Tel:(312)503-2224;Fax:(312)503-2798

9
10

       UNITED STATES DISTRICT COURT
      CENTRAL DISTRICT OF CALIFORNIA

11  LUIS ALBERTO GALVIS MUJICA,      )   Case No. CV 03-2860 WJR JWJx
    on behalf of himself and         )
12  as representative of the Estates )   COMPLAINT FOR DAMAGES,
    of TEREZA MUJICA HERNANDEZ and   )   INJUNCTIVE AND DECLARATORY
13  EDILMA LEAL PACHECO and JOHANNY  )   RELIEF FOR:
    HERNANDEZ BECERRA.               )
14                                   )   1.   Extra-Judicial Killing
            Plaintiff,               )
15                                   )   2.   Torture
         v.                          )
16                                   )   3.   Crimes Against Humanity
                                     )
17  OCCIDENTAL PETROLEUM, and        )   4.   Cruel, Inhuman and
    CORPORATION, AIRSCAN, INC.       )        Degrading Treatment
18        AND                        )
         Defendants.                 )   5.   War Crimes
19                                   )
                                     )   6.   Wrongful Death
20                                   )
                                     )   7.   Intentional Infliction of
21                                   )        Emotional Distress
                                     )
22                                   )   8.   Negligent Infliction of
                                     )        Emotional Distress
23                                   )
                                     )   9.   Violation of Business &
24                                   )        Professions Code, Sec.
                                     )        17200
25                                   )
                                     )   DEMAND FOR JURY TRIAL
26                                   )
27                                   )
28                                   )


ENTERED ON ICMS
APR 2 4 2003
CV

J:\CASES\MUJICA\Oxycomplaint4[1].23_9.wpd

**COMPLAINT**

## I. **NATURE OF ACTION**

1.   Plaintiff Luis Alberto Galvis Mujica ("Plaintiff") brings this case on behalf of himself for the damages he has suffered, including pain and suffering, as a result of the violent deaths of his mother, Tereza Mujica Hernandez; his sister, Edilma Leal Pacheco; and his cousin, Johanny Hernandez Becerra.  He also brings this case as representative of the estate of his mother, sister and cousin.   He further brings this case on behalf of himself for the damages he has suffered due to his forced exile from his home and family.

2.   Plaintiff's mother, sister and cousin were killed on December 13, 1998, when a cluster bomb was dropped upon their town of Santo Domingo, Colombia, by a helicopter operated by the Colombian Air Force ("CAF") -- an official branch of the Colombian military ("Military", "Colombian Armed Forces").  The CAF receives direct funding from Defendant Occidental Petroleum Corporation ("Occidental") in return for protecting Occidental's pipeline in Cano Limon and was acting in the furtherance of the private interests of Occidental in carrying out this bombing.  The CAF received the coordinates for this bombing directly from Defendant AirScan, Inc. ("AirScan") which was working in its capacity as a security contractor and agent of Defendant Occidental.  This bombing, moreover, was planned by the CAF and Defendants in room "G" of Defendant Occidental's complex in Cano Limon, Colombia and Occidental and AirScan provided support and direction for the attack.

3.   Defendant AirScan provided aerial surveillance for this mission during the bombing, helped the CAF to identify the target for

1 bombing and chose the places for Colombian military troop

2 disembarkment during the mission.  They did so through the efforts of

3 three employees who, at the time of the attack, were flying a

4 Skymaster airplane supplied by defendant Occidental at the time of the

5 attack.  Accompanying the three Airscan pilots in the Skymaster plane

6 during the bombing raid was a Colombian military officer who at the

7 time was serving as a CAF liaison to Occidental.

8     4.   The killings of Plaintiff's mother, sister and niece

9 constitute extra-judicial killings in contravention of the law of

10 nations, and as such, are actionable under the Alien Tort Claims Act

11 ("ATCA"), 28 U.S.C., Section 1350 and the Torture Victims Protection

12 Act ("TVPA"), 28 U.S.C., Section 1350, Note, or, in the alternative,

13 resulted from military actions which failed to take sufficient care to

14 avoid reasonably foreseeable civilian casualties, and, as such, are

15 actionable under the Alien Tort Claims Act, 28 U.S.C. Section 1350.

16 Defendants' actions also violated international humanitarian law and

17 constituted war crimes and crimes against humanity actionable under

18 the common law of the United States.  The Plaintiff brings this action

19 against Defendants Occidental and Airscan because they were involved

20 in a conspiracy with the CAF to carry out these unlawful attacks and

21 because these defendants provided practical support and encouragement

22 to the CAF in carrying out this massacre.  This assistance had a

23 substantial effect on the perpetration of the massacre.  The Plaintiff

24 also brings this case against Defendants under California tort law and

25 California's Business & Professions Code, Section 17200.

26

27                       **II.  PARTIES**

28     5.   Plaintiff is a citizen of the Republic of Colombia, South

1  America, and his permanent domicile is in that country.  Plaintiff and

2  his family are from the hamlet of Santo Domingo, a very small

3  community of several homes located in the Department of Arauca.

4  Plaintiff sues on behalf of himself for the damages he suffered as a

5  result of the killings of his mother, Tereza Mujica Hernandez; his

6  sister, Edilma Leal Pacheco; and his cousin, Johanny Hernandez Becerra

7  and for his own damages suffered as a result of the bombing and

8  sacking of his town and family home and the other acts carried out by

9  Defendants with CAF, as alleged herein.  Because of these acts

10  plaintiff has been forced into involuntary exile from his country and

11  has been separated from his family.  Plaintiff also brings this case

12  on behalf of his mother and sister and cousin, as the representative

13  of their estates, for the damages they suffered as a result of the

14  Defendants' acts alleged herein.

15       6.   Defendant Occidental is a corporation doing business within

16  the United States and with its principal headquarters located at 10889

17  Wilshire Boulevard, Los Angeles, California 90024-4201.  Occidental

18  also does business in Cano Limon, Colombia where it operates a large

19  oil production facility and pipeline.

20       7.   Defendant AirScan is a corporation doing business within the

21  United States with its principal headquarters at 3505 Murrell Road,

22  Rockledge, Florida 32955.  At the time of the events alleged in this

23  complaint, Defendant Airscan was a contractor for Defendant

24  Occidental, providing security for Occidental's Cano Limon oil

25  production facility and pipeline in Colombia, South America, and later

26  became a de facto agent of Occidental while under formal contract to

27  CAF.

28

III. **JURISDICTION & VENUE**

8.    This Court has federal question jurisdiction under 28 U.S.C. § 1331 and the Alien Tort Claims Act ("ATCA"), 28 U.S.C. § 1350. The ATCA provides federal jurisdiction for "any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." Plaintiff's causes of action arise, *inter alia*, under customary international law, as expressed in the Universal Declaration of Human Rights; the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment; the International Covenant on Civil and Political Rights; the Geneva Conventions of 1949 and the Protocols of 1977, the Charter of the Organization of American States; the American Declaration of the Rights and Duties of Man, the American Convention on Human Rights, the Convention on the Rights of the Child and numerous other international declarations and other authoritative documents.

9.    This Court also has jurisdiction under the Torture Victims Protection Act, 28 U.S.C., §1350, note.  The Torture Victims Protection Act ("TVPA") expressly provides for civil liability against any "individual," interpreted by the Ninth Circuit to include corporations, "who, under actual or apparent authority, or color of law, of any foreign nation -- (1) subjects an individual to torture . . . or (2) subjects an individual to extra-judicial killing . . . ."

10.    This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. §1367.

11.    This Court also has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. Section 1332, because the matter in controversy with respect to each of Plaintiff's claims exceeds $75,000, exclusive of interest and costs, for the named

1 | Plaintiff, and there is complete diversity of citizenship between
2 | Plaintiff and all Defendants.
3 |     12.  Venue properly lies in this Court pursuant to 28 U.S.C.
4 | Section 1391 (c) because Defendant Occidental does business and
5 | maintains its headquarters in the State of California and within the
6 | jurisdiction of this Court.  The contract between Defendant Occidental
7 | and Defendant Airscan was negotiated and executed in the State of
8 | California.
9 |
10 | **IV.  FACTS**
11 |     13.  Since 1986, Defendant Occidental has operated an oil
12 | production facility and pipeline in Cano Limon, Colombia.  The
13 | operation is a joint venture with the Colombian Government.  Defendant
14 | Occidental has legal and effective control of the operation.  Since
15 | 1997, Defendant Occidental has employed Defendant AirScan as a formal
16 | or de facto contractor to provide security for these Colombian
17 | operations.  During all times relevant herein, Occidental paid AirScan
18 | directly for its security services, or has channeled payment to
19 | AirScan through the Colombian Defense Ministry.  Occidental has
20 | claimed it employed AirScan to protect its operations from attacks by
21 | left-wing insurgents.  To this same end, Occidental has also worked
22 | closely with and provided material assistance, including tens of
23 | millions of dollars of financial assistance, to the Colombian Armed
24 | Forces.
25 |     14.  Defendants Occidental and AirScan knew that for years
26 | preceding the events described in this complaint, there were
27 | widespread human rights violations committed in Arauca by the
28 | Colombian military committed either directly by the military or

1  indirectly through right-wing paramilitary groups working with the
2  government's cooperation.   For a number of years prior to the December
3  1998 attack on Santo Domingo, the Colombian military, directly or
4  indirectly, participated in numerous massacres of civilians, the
5  disappearances and extra-judicial killings of local members of
6  peasant, labor and indigenous groups -- including members of the U'wa
7  tribe whose land Occidental was attempting to seize for oil-drilling
8  purposes -- and the forced displacement of hundreds of people from
9  their homes and land.   Prior to and leading up to the December 1998
10 massacre in Santa Domingo, Defendants Occidental and Airscan were
11 aware of the Colombian military's participation in such human rights
12 abuses.   Notwithstanding this knowledge, defendants continued to
13 provide the same military forces with financial and other material
14 assistance and continued to plan joint actions with it relating to
15 defendants' commercial activities.

16     15.   In the course of its security work for Occidental,
17 Defendant AirScan gathered strategic information which was used by the
18 Colombian Air Force to carry out the December 1998 bombing raid of
19 Santo Domingo.   AirScan flew numerous surveillance operations
20 throughout Arauca for the purpose of tracking guerilla movements for
21 the military and for Occidental.

22     16.   In 1998, Defendant Occidental knowingly provided an office
23 at its Cano Limon site to be used as the staging ground for the
24 bombing raid of Santo Domingo.   At this office, namely Room "G,"
25 officials of Defendant AirScan and the Colombian military met on
26 several occasions during 1998, including the morning of December 13,
27 to plan the raid on Santo Domingo.   Both AirScan and the military made
28 these plans in the course of their security work for Defendant

1  Occidental and were acting as agents of Defendant Occidental at the
2  time.

3       17.  On December 13, 1998, Defendant AirScan and the Colombian
4  Air Force, in their role as security contractors for Defendant
5  Occidental, jointly participated in the raid upon Santo Domingo.  The
6  Colombian Air Force, in carrying out this raid, was acting in its role
7  of providing security.  During this raid, Defendant AirScan utilized a
8  Skymaster plane bearing the markings of the Colombian air force and
9  funded by Defendant Occidental for many years.  Defendant AirScan
10 manned this plane with three of its employee pilots from the United
11 States as well as a Colombian military officer who at the time was
12 serving as air force liaison to Defendant Occidental.  Using
13 intelligence it gathered in the course of providing security for
14 Occidental and utilizing the infra-red sensors and high-resolution
15 cameras of Occidental's Skymaster plane, the three AirScan pilots, Joe
16 Orta, Charlie Denny and Dan MacClintock, directed the Colombian Air
17 Force helicopters in the raid upon Santo Domingo.  It was the AirScan
18 pilots who chose the targets for the raid, pointed out vulnerable
19 areas and chose the places for Colombian troop disembarkment.  This
20 AirScan-led raid consisted of strafing with machine-gun fire, air-to-
21 surface rockets and including the dropping of at least one cluster
22 bomb, which then exploded into multiple fragments, on the small hamlet
23 of Santo Domingo.

24      18.  Residents of Santa Domingo witnessed several low-flying
25 helicopters flying overhead and made their best efforts to communicate
26 with the pilots that they were in fact civilians.  Thereafter, several
27 witnesses saw an object drop from one of the helicopters as it flew
28 overhead followed by explosions.

19.   Subsequently, a cluster bomb exploded in Santo Domingo, destroying homes and directly resulting in the deaths of 17 innocent and unarmed civilians, including 6 children, and wounding 25 more.

20.   Among those killed by the cluster bombs were Plaintiff's mother, Tereza Mujica Hernandez; his sister, Edilma Leal Pacheco; and his cousin, Johanny Hernandez Becerra.   Plaintiff's father was also seriously injured in the raid.   Meanwhile, residents of Santa Domingo were impeded from escaping by one or more CAF helicopters which strafed a truck attempting to carry away the dead and to take the wounded to medical care.   Later, within a day or two, Colombian military troops entered the town, as directed by AirScan, and blocked all exit from the town, including vehicles attempting to remove the injured to hospitals.   These same troops sacked the town, ransacking homes and stealing property from the residents and their homes. Plaintiff's home was one of those ransacked by the troops.

21.   While the stated purpose of the raid was to protect Defendant Occidental's pipeline from sabotage by left-wing insurgents, no insurgents were killed by the cluster bomb dropped on the hamlet of Santo Domingo and the raid was conducted in an indiscriminate manner without the slightest regard for the civilians living there.   No insurgents were known to live in Santo Domingo at the time of this massacre and no insurgent forces were present in Santo Domingo at the time of the raid.   Rather, any combatants were at least 1 to 2 kilometers outside of Santo Domingo.   Defendants were very aware of this fact at the time of the raid, but carried it out nonetheless.

22.   The December 13, 1998 raid upon Santo Domingo, conducted as it was by Defendants with logistical and other support provided by the Colombian Armed Forces, was carried out under the color of foreign

1  official authority.

2      23.   Plaintiff was about 800 to 1000 meters out of town at the

3  time the bombing of Santo Domingo began on December 13.  At about 9:45

4  a.m. on that morning, he could see a CAF helicopter flying around the

5  vicinity of Santo Domingo, he then heard an explosion and shortly

6  thereafter saw smoke coming from the vicinity of the helicopter.

7  Believing that the helicopter had bombed Santo Domingo, Plaintiff

8  hurried back to Santo Domingo to see if his family was safe.  On his

9  way into town, he met people who told him that they had been bombed

10  and that his father had been wounded.  Before he made it into town, a

11  CAF helicopter began to fire upon him.  He feared for his life and

12  safety and took cover.  He was unable to enter into Santo Domingo and

13  fled into the neighboring town of Cano Verde.

14      24.   On December 14, Plaintiff learned by phone that his mother

15  had been killed in the raid.  That afternoon, he returned to Santo

16  Domingo and found his mother, sister, cousin and some friends had been

17  killed in the attack.  Later that day Plaintiff left town again

18  because of his fear that the military would return to kill more

19  innocent civilians.

20      25.   When Plaintiff returned to Santo Domingo again, he found

21  that his family home, from which they also operated a small grocery

22  store, had been ransacked.  Grain and merchandise had been stolen from

23  his home and the house was in a shambles.  Plaintiff found bags inside

24  the house upon which was written, "For The Exclusive Use Of The

25  Colombian Armed Forces."

26      26.   As a result of these events, Plaintiff suffered serious

27  emotional trauma and was put into a state of fear for his life and the

28  lives of his remaining family members.

27.   As a foreseeable consequence of the Defendants' actions as
described herein, Plaintiff was forced to go into exile.
Specifically, Plaintiff received death threats from the Colombian
Armed Forces who apprehended and interrogated him after the bombing
raid in an attempt to keep him quiet about the above-described events.
Plaintiff's close friend, Angel Riveros, another witness to these
events, was killed inside of Plaintiff's home in Colombia in January
2002 in retaliation for his giving testimony about these events.
Plaintiff cannot return to Colombia safely to his wife and child and
other family members as a result of the events of December 1998 and
their continuing consequences, consequences that were known or should
have been known to defendants.   Plaintiff also continues to suffer
emotional trauma from the direct consequences of the raid upon his
town, home and family and from the killing of his family members.

28.   For the reasons described above, Plaintiff has been unable
to pursue available and effective legal action in Colombia against
Defendants to remedy the injuries he suffered as a direct consequence
of their actions as described herein.

29.   Defendant Occidental is directly and vicariously liable for
all of the aforementioned tortious actions committed by AirScan and
the CAF as these actions were carried out in furtherance of
Occidental's business interests and activities and with the advance
knowledge, acquiescence and subsequent ratification of Occidental.
Moreover, Defendant Occidental practically assisted and encouraged all
of CAF's tortious conduct, and such assistance and encouragement had a
substantial effect on the perpetration of those acts.   Further, all of
the wrongful acts alleged herein were committed by individuals
retained as employees or agents of Occidental, making Occidental

1   directly or vicariously liable for all of the wrongful acts.

2       30.   Defendant AirScan, in turn, is directly and vicariously

3   liable for all of the aforementioned tortious actions committed by the

4   CAF as these actions were carried out in furtherance of its business

5   interests and activities and with the advance knowledge, acquiescence

6   and subsequent ratification of AirScan.  Moreover, Defendant Airscan

7   practically assisted and encouraged all of CAF's tortious conduct, and

8   such assistance and encouragement had a substantial effect on the

9   perpetration of those acts.  Further, all of the wrongful acts alleged

10  herein were committed by individuals retained as employees or agents

11  of AirScan, making AirScan directly or vicariously liable for all of

12  the wrongful acts.

13      31.   At all times herein material, Occidental, AirScan and the

14  CAF were joint venturers and co-conspirators and were working in

15  concert with each other and acting within the course and scope of such

16  joint venture and conspiracy.  To the extent that said conduct was

17  perpetrated by either one of the Defendants, or by the CAF, the

18  remaining Defendant or Defendants confirmed and ratified the same.  As

19  a result, the Defendants are jointly and severally liable for the

20  unlawful actions alleged herein and each Defendant is vicariously

21  liable for the misconduct of the other Defendant and the CAF.

22

23  **V.   DEFENDANTS' VIOLATIONS OF LAW**

24      32.   Defendants' actions violate, and Plaintiff's causes of

25  action arise from, the following laws, agreements, conventions,

26  resolutions and treaties, which constitute specific examples of the

27  applicable law of nations, customary international law and state law:

28      (a)   Alien Tort Claims Act, 28 U.S.C. § 1350;

(b)   Torture Victim Protection Act, 28 U.S.C. § 1350;

(c)   Common law of the United States of America;

(d)   Customary International Law;

(e)   United Nations Charter, 59 Stat. 1031, 3 Bevans 1153 (1945);

(f)   Universal Declaration of Human Rights, G.A. Res. 217A(iii), U.N. Doc. A/810 (1948);

(g)   International Covenant on Civil and Political Rights, G.A. Res. 2220A(xxi), 21 U.N. Doc., GAOR Supp. (No. 16) at 52, U.N. Doc. A/6316 (1966);

(h)   Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, G.A. res. 39/46, 39 U.N. Doc., GAOR Supp. (No. 51) at 197, U.N. Doc. A/39/51 (1984)(ratified 10/28/98);

(i)   Declaration on the Protection of All Persons From Being Subjected to Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, G.A. Res. 3452, 30 U.N. Doc., GAOR Supp. (No. 34) at 91, U.N. Doc. A/10034 (1976);

(j)   Vienna Declaration and Programme of Action (World Conference on Human Rights, 1993);

(k)   Common Article 3 of the 1949 Geneva Conventions, Articles 51 and 57 of the 1977 Geneva Protocol I or, in the alternative, Article 13 of the 1977 Geneva Protocol II;

(l)   The Convention on the Rights of the Child, G.A. Res. 44/25, annex, 44 U.N. GAOR Supp. (No. 49) at 167, U.N. Doc. A/44/49 (1989); and

(m)   Statutes and common law of the State of California, including but not limited to, wrongful death, negligence, and recklessness.

1

## VI. CLAIM FOR RELIEF

2

### First Cause of Action
### Extrajudicial Killing and Violation of the Laws of War
3
*By Plaintiff Against All Defendants*

4          33.  Plaintiff incorporates by reference paragraphs 1 through 32

5   of this Complaint as is set forth herein.

6          34.  Defendants engaged in acts of intentionally and tortiously

7   causing the deaths of residents in the hamlet of Santo Domingo,

8   including Plaintiff's mother, sister and cousin.  Specifically, as is

9   alleged above, Defendants, operating under color of law, conspired and

10   acted jointly with the CAF to carry out a bombing raid upon the town

11   of Santo Domingo, thereby, and foreseably, killing these members of

12   Plaintiff's family.  Defendants' employees and/or agents and/or

13   accomplices, including the CAF and pilots Joe Orta, Charlie Denny and

14   Dan MacClintock, acting in the furtherance of Occidental's business

15   interests, killed Plaintiff's mother, sister and cousin.  In addition,

16   Defendants provided significant financial support, supplies,

17   intelligence, logistical support and other substantial assistance that

18   contributed to the ability of the Colombian Air Force to carry out its

19   role in the conspiracy to killing Plaintiff's mother Tereza Mujica

20   Hernandez; his sister, Edilma Leal Pacheco; and his cousin, Johanny

21   Hernandez Becerra.  These acts violate the law of nations, customary

22   international law, including, but not limited to, the specific laws,

23   agreements, conventions, resolutions and treaties listed in paragraph

24   34, *supra*.  The acts described herein are actionable under the ATCA

25   and the TVPA, and, if such a showing is required, were done jointly

26   with the official armed forces of the Republic of Colombia.

27          35.  Even if defendants did not intentionally target Plaintiff

28   and his family members, defendants deliberately perpetrated an

1  indiscriminate attack, without sufficient precautions, which they

2  should have expected to cause loss of civilian life, injury to

3  civilians and damage to civilian objects, and a combination thereof,

4  which would be excessive in relation to the concrete and direct

5  military advantage anticipated.  If the war in Colombia is an

6  international war, defendants thereby violated Articles 51 and 57 of

7  the 1977 Geneva Protocol I and the customary international law of war.

8  If the war in Colombia is a non-international war, defendants thereby

9  violated Article 13 of the 1977 Geneva Protocol II and the customary

10 international law of war.

11      36.  Defendants' conduct in violation of the law of nations,

12 customary international law, including, but not limited to, the

13 specific laws, agreements, conventions, resolutions and treaties

14 listed in paragraph 32, *supra,* resulted in the deaths of Plaintiff's

15 family members.  Defendants are jointly and severally liable for these

16 violations of the law of nations, customary international law,

17 including, but not limited to, the specific laws, agreements,

18 conventions, resolutions and treaties listed in paragraph 32, *supra.*

19 Defendants are also vicariously liable for any violations of their

20 employees or agents of the law of nations, customary international

21 law, including, but not limited to, the specific laws, agreements,

22 conventions, resolutions and treaties listed in paragraph 32 above.

23      37.  Plaintiff seeks compensatory and punitive damages, in

24 amounts to be ascertained at trial, for the losses and suffering he

25 endured as a result of the killing of his mother, sister and cousin.

26 Plaintiff, as the representative of the estates of his mother, sister

27 and cousin, also seeks compensatory and punitive damages, amounts to

28 be ascertained at trial, for the losses and suffering endured by his

mother, sister and cousin themselves as a result of the wrongful

actions of the Defendants herein.  The Plaintiff further seek

equitable relief to prevent further human rights violations.

.

### Second Cause of Action

### Torture
### *By Plaintiff Against All Defendants*

38.  Plaintiff incorporates by reference paragraphs 1 through 37
of this Complaint as is set forth herein.

39.  The acts described herein placed Plaintiff himself, and his
mother, sister and cousin, in great fear for their lives and caused
them to suffer severe physical and mental pain and suffering.
Plaintiff has been subjected to acute and continuing emotional and
physical trauma as a result of the killing of a significant portion of
his family and by his being forced, against his will and as a
proximate cause of the actions of the Defendants detailed herein, into
exile from his home, town, country and wife and child.  The severe
suffering and exile of Plaintiff was a forseeable and intended
consequence of Defendants' actions described herein.  Defendants acted
with knowing disregard for the life and well-being of the Santo
Domingo residents, including Plaintiff and his family.  The acts of
Defendants amounted to the torture of Plaintiff, his mother, sister
and cousin and violate the law of nations, customary international
law, including, but not limited to, the specific laws, agreements,
conventions, resolutions and treaties listed in paragraph 32, above.

40.  The acts described herein were inflicted deliberately and
intentionally for purposes which include, among others, punishing the
victim or third persons, and constitute torture in violation of the
laws of nations as described above in paragraph 32 and are therefore

1  actionable under both the ATCA and the TVPA.

2

3                          **Third Cause of Action**

4                          **Crimes Against Humanity**
                      *By Plaintiff Against All Defendants*
5
        41.  Plaintiff incorporates by reference paragraphs 1 through 40
6
   of this Complaint as is set forth herein.
7
        42.  The attack upon the hamlet of Santo Domingo; the killing of
8
   civilians, including Plaintiff's family members, through the use anti-
9
   personnel cluster bombs which destroy and kill persons without regard
10
   to whether they are armed or not; and the forced displacement of
11
   civilians, such as Plaintiff himself, were neither random nor
12
   occasional but widespread and systematic.  These acts occurred under
13
   the direction, encouragement and acquiescence of Defendants.
14
        43.  The acts described herein constitute crimes against
15
   humanity, in violation of the laws, agreements, conventions,
16
   resolutions and treaties described in paragraph 32, above, and are
17
   therefore actionable under the ATCA and the TVPA.  Customary
18
   international law prohibits inhumane acts of a very serious nature
19
   such as willful killing, forced displacement and other inhumane acts
20
   committed as part of a widespread or systematic attack against any
21
   civilian population.   Leaders, organizers, instigators and
22
   accomplices participating in the formulation of these acts, such as
23
   Defendants here, are responsible for all acts performed by any person
24
   in execution of such plan.
25
   ///
26
   ///
27
   ///
28

## Fourth Cause of Action

### Cruel, Inhuman and Degrading Treatment
### *By Plaintiff Against All Defendants*

44. Plaintiff incorporates by reference paragraphs 1 through 43 of this Complaint as is set forth herein.

45. The acts described herein had the intent and the effect of grossly humiliating and debasing Plaintiff and his mother, sister and cousin, inciting fear and anguish and breaking their will and physical and moral resistance.

46. Defendants' intentional acts described herein forced Plaintiff, against his will and under fear of harm, to flee his home, his family, his town and his country.

47. Plaintiff and his mother, sister and cousin were placed in great fear for their lives and forced to suffer severe physical and psychological abuse and agony.   The acts described herein constitute cruel, inhuman and degrading treatment in violation of the laws, agreements, conventions, resolutions and treaties described in paragraph 32, above, and are therefore actionable under both the ATCA and the TVPA.

## Fifth Cause of Action

### War Crimes
### *By Plaintiff Against All Defendants*

48. Plaintiff incorporates by reference paragraphs 1 through 47 of this Complaint as set forth herein.

49. Colombia has been engaged in a civil war with ongoing and active hostilities, including during the time of this bombing. Defendants, through their actions directing and conspiring with the Colombian military, their actions in support of the military, and also in their actions carried out through the military, are directly and

1  vicariously liable for war crimes perpetrated with their participation

2  and ratification.

3      50.  Plaintiff, his mother, sister and cousin were civilians that

4  took no part in the hostilities.  Defendants made Plaintiffs the

5  object of attack and threats in violation of the laws of war.  The

6  acts described herein constitute violence to life and person,

7  including extrajudicial killing, torture and mutilation. They also

8  contain incidents of outrages upon human dignity, forced movement,

9  pillage and denial of medical treatment.  These acts occurred at the

10 encouragement, direction, participation and acquiescence of Defendant.

11     51.  The crimes described herein are war crimes in violation of

12 the laws described in paragraph 32, above, specifically Common Article

13 3 of the Geneva Conventions and the Protocols to those Conventions,

14 and are therefore actionable under the ATCA and TVPA.  Leaders,

15 organizers, instigators and accomplices participating in the

16 formulation of these acts, such as Defendants here, are responsible

17 for all acts performed by any person in execution of such plan.

18

19                         **Wrongful Death**
                  ***By Plaintiff Against All Defendants***

20

21     52.  Plaintiff incorporates by reference paragraphs 1 through 51

22 of this Complaint as is set forth herein.

23     53.  Defendants acted in concert to commit, or Defendants'

24 employees or agents committed, acts that constitute wrongful death

25 under the laws of the State of California and that caused the deaths

26 of Plaintiff's mother Tereza Mujica Hernandez; his sister, Edilma Leal

27 Pacheco; and his cousin, Johanny Hernandez Becerra.  Plaintiff,

28 relative and representative of the estates of these deceased, seek

   damages herein for pecuniary loss resulting from loss of society,

1   comfort, attention, services and support and for the losses suffered

2   by his mother, sister and cousin themselves.

3        54.  Defendants' actions were a direct and substantial cause of

4   .the deaths of Plaintiff's mother Tereza Mujica Hernandez; his sister,

5   Edilma Leal Pacheco; and his cousin, Johanny Hernandez Becerra.

6   Defendants failed to use due care to protect them from injury and

7   harm, thereby proximately causing their wrongful deaths.  Plaintiff is

8   entitled to recover compensatory and punitive damages in amounts to be

9   ascertained at trial.

10

11                         **Sixth Cause of Action**

12              **Intentional Infliction of Emotional Distress**
                   ***By Plaintiff Against All Defendants***

13

14       55.  Plaintiff incorporates by reference paragraphs 1 through 54

     of this Complaint as is set forth herein.

15
         56.  The allegations described herein constitute outrageous
16
     conduct against Plaintiff, his mother, sister and cousin, and are
17
     without privilege.
18
         57.  Defendants intended to cause Plaintiff, his mother, sister
19
     and cousin to suffer emotional distress, or, in the alternative,
20
     Defendants engaged in the conduct with reckless disregard of the
21
     probability of causing these individuals to suffer emotional distress.
22
         58.  Plaintiff and his mother, sister and cousin suffered severe
23
     emotional distress and the outrageous conduct of the Defendants was a
24
     cause of the emotional distress suffered by them.
25
         59.  Defendants' outrageous conduct constitutes the intentional
26
     infliction of emotional distress and is actionable under the laws of
27
     California, the United States and Colombia.
28
     ///

1

### Seventh Cause of Action

2

### Negligent Infliction of Emotional Distress
### By Plaintiff Against All Defendants

3

4

60.   Plaintiff incorporates by reference paragraphs 1 through 59

5

of this Complaint as is set forth herein.

6

61.   At all times relevant herein, Defendants owed Plaintiff and

7

his family a duty to act with reasonable care and injury to Plaintiff

8

and his family was reasonably foreseeable.

9

62.   At all relevant times, Defendants knew, or reasonably should

10

have known, that the conduct described herein would and did

11

proximately result in physical and emotional distress to Plaintiff and

12

his family.

13

63.   Despite said knowledge, power and duty, Defendants breached

14

their duty to Plaintiff and his family, and thereby negligently failed

15

to act so as to stop engaging in the conduct described herein and to

16

prevent or to prohibit such conduct or to otherwise protect Plaintiff

17

and his family.   To the extent that said negligent conduct was

18

perpetrated by one Defendant, the remaining Defendant confirmed and

19

ratified said conduct with the knowledge that Plaintiff's and his

20

family's emotional and physical distress would thereby increase and

21

with a wanton reckless disregard of the deleterious consequences to

22

Plaintiff and his family.

23

64.   Plaintiff was a bystander and immediately observed the

24

circumstances involving the death on his family members.

25

65.   As a direct and legal result of Defendants' wrongful acts,

26

Plaintiff has suffered and will continue to suffer significant

27

physical injury, pain and suffering and extreme and severe mental

28

anguish and emotional distress.

66.   Defendants' conduct constitutes the negligent infliction of

emotional distress and is actionable under the laws of California, the United States and Colombia.

### Eighth Cause of Action

#### Violation of Business & Professions Code, Sec. 17200
#### *By Plaintiff Against All Defendants*

67. Plaintiff incorporates by reference paragraphs 1 through 66 of this Complaint as is set forth herein.

68. Plaintiff brings this cause of action on behalf of himself and on behalf of the general public, pursuant to Business and Professions Code, Sec. 17204. The conduct of Defendants as alleged herein has been and continues to be deleterious to Plaintiff and the general public, and Plaintiff is seeking to enforce important rights affecting the public interest within the meaning of Code of Civil Procedure, Sec. 1021.5.

69. Defendants' violent business practices as alleged herein constitute ongoing and continuos unfair business practices within the meaning of Business and Professions Code, Sec. 17200. Such practices include, but are not limited to, the killing, torture, intimidation and forced displacement of civilians in the vicinity of Occidental' oil-drilling operations and pipeline in Colombia. Members of the public have been in the past and will in the future likely be damaged by these practices.

70. The conduct as alleged herein constitutes a violation of Colombian laws relating to criminal conduct, as well as obligations under customary international law. Defendants' use of the Colombian Armed Forces to protect and further their business interests through violent and indiscriminate means creates an unfair business advantage over competitors within California and the United States.

1   71. The acts described herein constitute unfair business
2 practices in violation of California Business & Professions Code,
3 Sect. 17200.

4 . 72. The conduct as described herein constitutes a violation of
5 California laws relating to criminal statutes as well as obligations
6 under customary international law. The use of such unfair and illegal
7 forced law creates an unfair business advantage over competitors
8 within California and the United States.

9   73. Plaintiff seeks injunctive relief, disgorgement of all
10 profits resulting from these unfair business practices, restitution
11 and other appropriate relief on behalf of himself and members of the
12 general public as provided in Business and Professions Code, Sec.
13 17203.

14                      **VII. DEMAND FOR JURY TRIAL**

15   74. Plaintiff demands a trial by jury on all issues so triable.

16                      **VIII. PRAYER FOR RELIEF**

17 WHEREFORE, Plaintiff respectfully requests the Court to:

18 (a)  enter judgment in favor of Plaintiff on all counts of the
19      Complaint;

20 (b)  declare that Defendants have violated Plaintiff's human
21      rights and the laws of the State of California and the
22      United States, as set forth herein;

23 (c)  award Plaintiff compensatory and punitive damages;

24 (d)  grant Plaintiff equitable relief, permanently enjoining
25      Defendants from further engaging in or aiding or abetting
26      human rights abuses against Plaintiff and other residents of
27      Santo Domingo;

28 (e)  award Plaintiff the costs of suit including reasonable

1   attorneys' fees;

2   (f)   award Plaintiff such other and further relief as the Court

3   deems just under the circumstances.

4

5   Dated: April 23, 2003

6                                   ATTORNEYS FOR PLAINTIFFS

7                                   Terry Collingsworth
                                    DC Bar No. 471830
8                                   INTERNATIONAL LABOR
                                    RIGHTS FUND
9                                   733 15th Street N.W.
                                    Suite 920
10                                  Washington, D.C. 20005
                                    Tel (202) 347-4100
11                                  Fax (202) 347-4885

12                                  Daniel M.  Kovalik
                                    PA Bar No.  69065
13                                  Five Gateway Center
                                    Pittsburgh, PA 15222
14                                  Tel: (412)562-2518

15                                  Douglas W.  Cassel
                                    Bridget Arimond
16                                  Center for International Human Rights
                                    Northwestern Univ.  Law School
17                                  357 East Chicago Ave.
                                    Chicago, IL 60611
18                                  Tel: (312) 503-2224
                                    Fax: (312) 503-2798

19
                                    PAUL HOFFMAN (SBN# 07244)
20                                  Schonbrun DeSimone Selplow
                                    Harris & Hoffman LLP
21                                  723 Ocean Front Walk
                                    Venice, CA 90291
22                                  Tel: 310 396-0731
                                    Fax: 310 399-7040
23

24   By: _____
                                    Paul L.  Hoffman
25                                  Attorney for Plaintiffs

26

27

28

1                          DEMAND FOR JURY

2

3       Plaintiff hereby demand trial by jury on all issues.

4
   Dated: April 23, 2003
5
                              Schonbrun DeSimone Seplow
6                             Harris & Hoffman LLP

7

8                             By: _____
                                   Paul L.   Hoffman
9                                  Attorney for Plaintiffs

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28